## S07A0600. ROBERTS v. THE STATE.
(651 SE2d 689)

BENHAM, Justice.

This appeal is from Michael T. Roberts's conviction for the murder of James Raffield.[1] The evidence adduced at trial showed the victim rode with Jason Mills to an apartment complex in Warner Robins at 3:30 a.m. on January 18, 2002, to purchase marijuana. Raffield bought a small amount of marijuana from Kenshaun Taylor, who testified at trial he obtained the marijuana from appellant's apartment, at which time he told Roberts that Raffield had a large sum of money. Raffield and Mills gave an acquaintance from the apartment complex a ride to a nearby store, then returned to the parking lot where the purchase of marijuana had occurred. According to Taylor, Roberts had decided to rob the men upon their return to the apartment complex and had armed himself for the purpose. Taylor testified he took the gun from Roberts, but while he spoke with Raffield, Roberts took the gun from Taylor's waistband, pointed it at Raffield and ordered him to "give it up," then shot him once in the chest. Mills drove Raffield to a hospital where he died from a single gunshot wound to his chest.

1. The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find Roberts guilty beyond a reasonable doubt of felony murder with the underlying felony of criminal attempt to commit armed robbery. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Roberts argues the trial court erred in denying his motion to suppress custodial statements he made after being arrested.

> In ruling on the admissibility of an in-custody statement, a trial court must determine whether, based upon the totality of the circumstances, a preponderance of the evidence demonstrates that the statement was made freely and voluntarily. Unless clearly erroneous, a trial court's findings as to

---

[1] The murder of James Raffield occurred on January 18, 2002, and the Houston County grand jury indicted Roberts on March 19, 2002, for two counts of felony murder and for the offenses underlying the murder charges, criminal attempt to commit armed robbery and aggravated assault. A jury trial conducted December 9-12, 2002, concluded with verdicts of guilty on all counts. The trial court sentenced Roberts to life imprisonment for the felony murder based on criminal attempt to commit armed robbery and held that the other offenses all merged into that one. Roberts's motion for new trial, filed December 16, 2002, and amended on September 22, 2006, and October 2, 2006, was denied on October 26, 2006. Pursuant to a timely notice of appeal filed November 21, 2006, the appeal was docketed in this Court on January 2, 2007, and was submitted for decision on the briefs.

factual determinations and credibility relating to the admissibility of the defendant's statement at a *Jackson v. Denno* hearing will be upheld on appeal. [Cit.]

*Folson v. State*, 278 Ga. 690 (2) (606 SE2d 262) (2004). The only evidence presented to the trial court regarding the motion to suppress was the testimony of the interrogating officer and the executed forms by which Roberts waived his right to remain silent and his right to be represented during questioning by an attorney. Since that evidence supported the trial court's denial of the motion to suppress, we find no error in the trial court's decision. Id.

3. In support of his contention the trial court erred in denying his motion to suppress the fruit of a search of an apartment at the complex where the crime was committed, Roberts asserts probable cause to authorize the issuance of the search warrant was not shown. The evidence at the hearing on the motion to suppress showed that the magistrate who issued the search warrant was informed that an eyewitness at the scene saw persons involved in the shooting enter and exit the apartment in question. Since that testimony was sufficient to show a fair probability that evidence of the crime would be found at the premises described in the warrant, the judge issuing the search warrant had a substantial basis for determining that there was probable cause to issue the warrant. *Ibekilo v. State*, 277 Ga. App. 384 (1) (626 SE2d 592) (2006).

4. Roberts contends the trial court erred in denying his demurrer because the indictment did not properly allege the essential elements of the predicate offense of criminal attempt to commit armed robbery.[2] The indictment alleged that Roberts, with the intent to commit theft, attempted to take money, the property of another, from the victim by use of a firearm, an offensive weapon. "A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon. . . ." OCGA § 16-8-41 (a). Since the indictment set out all the essential elements of the crime and Roberts could not admit to those allegations without being guilty of a crime, the indictment was sufficient against a general demurrer. *Stinson v. State*, 279 Ga. 177 (2) (611 SE2d 52) (2005). To the extent Roberts's attack on the indictment can be

---

[2] Roberts made the same assertion regarding the predicate offense of aggravated assault, but since that conviction was merged into the single felony murder conviction, that issue is moot.

considered a special demurrer, seeking greater specificity, that demurrer was waived by his failure to interpose it prior to pleading to the indictment. Id.[3]

5. In response to Roberts's motion pursuant to *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), the trial court required the prosecuting attorney to provide "a race-neutral, case-related, clear and reasonably specific explanation for the exercise of its strikes" (*Barnes v. State*, 269 Ga. 345, 349 (6) (496 SE2d 674) (1998)) used to excuse four African-American jurors. After hearing the explanation, the trial court found no discriminatory pattern in the use of the State's peremptory challenges. That finding "is entitled to great deference and will be affirmed unless clearly erroneous. [Cit.]" Id. The State explained one strike as being based, among other reasons, on the juror's acquaintance with a witness, which is a race-neutral reason for exercising a peremptory challenge. *Curles v. State*, 276 Ga. 237 (5) (575 SE2d 891) (2003). Another juror was challenged because she was both single and unemployed. A juror's unemployment, when coupled with other race-neutral reasons, has been accepted as a race-neutral reason for a challenge. *Slade v. State*, 270 Ga. 305 (1) (509 SE2d 618) (1998). In the present case, the prosecuting attorney's expressed concern that a juror who is both single and unemployed may lack sufficient ties to the community to be concerned about law enforcement constitutes such an additional reason. Roberts's effort to discredit the stated reason by pointing out there were other single or unemployed or retired persons on the panel who were not challenged does not take into account the difference between unemployment and retirement and fails to show there were any other jurors who were both single and unemployed. The remaining two jurors were peremptorily challenged by the State because they stated that family members had been treated badly in encounters with law enforcement personnel. That, too, has been accepted as a race-neutral basis for exercising peremptory challenges. *Davis v. State*, 263 Ga. 5 (10) (426 SE2d 844) (1993). Since the record establishes the State presented reasons for the strikes that have been recognized as valid, we conclude the trial court's determination that no discriminatory pattern had been shown was not clearly erroneous and provides no basis for reversal.

---

[3] We held in *Palmer v. State*, 282 Ga. 466, 467 (651 SE2d 86) (2007), that the enactment of OCGA § 17-7-110 in 2003, providing that " '(a)ll pretrial motions, including demurrers and special pleas, shall be filed within ten days after the date of arraignment, unless the time for filing is extended by the court,' " changed the rule that special demurrers were waived by failure to file them prior to pleading to the indictment. In the present case, the indictment and the filing of the demurrers preceded the effective date of the statute, May 14, 2003, and the demurrer would have been late even had the statute been in effect because it was filed more than ten days after Roberts pled to the indictment.

6. Roberts complains his character was improperly placed in issue when the State introduced evidence he was a drug dealer and gave police a false name when questioned after the shooting. In *Johnson v. State*, 264 Ga. 456, 457 (1) (448 SE2d 177) (1994), this Court held that a statement "as to what transpired shortly before and shortly after the commission of the murder was admissible as relevant res gestae evidence," noting that

[t]he [S]tate is entitled to present evidence of the entire res gestae of the crime. Even though a defendant is not charged with every crime committed during a criminal transaction, every aspect of it relevant to the crime charged may be presented at trial. [Cit.] This is true even if the defendant's character is incidentally placed in issue. [Cit.]

In the present case, testimony established that the murder occurred in the course of an attempted armed robbery that was incidental to and followed directly from Roberts's participation in the sale of marijuana to the victim. Roberts's identification as a drug dealer was, therefore, part of the res gestae. Likewise, his effort shortly after the crime to deflect police attention by giving a false name was part of "what transpired shortly . . . after the commission of the murder" (id.) and was admissible as part of the res gestae. See also *Luke v. State*, 131 Ga. App. 799 (4) (207 SE2d 213) (1974) (rev'd on other grounds, *State v. Luke*, 232 Ga. 815 (209 SE2d 165) (1974)), holding a lie to police by a defendant questioned at the scene of a crime to be admissible as part of the res gestae. Since the fact of Roberts being a drug dealer and his false identification of himself both constitute part of the res gestae of the crime, there was no error in admitting that evidence even though it incidentally placed his character in issue. *Johnson v. State*, supra.

7. Roberts enumerates as error the trial court's grant of a motion in limine excluding evidence of the victim's conduct several hours preceding his death. Since there was no evidence at trial that any conduct of the victim played a role in his shooting death, evidence of his conduct elsewhere and at another time was not part of the res gestae or otherwise relevant. *Murphy v. State*, 267 Ga. 100 (4) (475 SE2d 590) (1996). Accordingly, we discern no error in the trial court's grant of the State's motion in limine.

8. A police witness qualified as an expert on fingerprint identification was asked about the accuracy of identification based on palm prints. Roberts objected on the ground the question called for the witness to testify to the ultimate question in the case and enumerates as error the trial court's overruling of the objection. Since the ultimate question was not identification but whether Roberts was guilty

of murder (see *Spradlin v. State*, 90 Ga. App. 97 (2) (82 SE2d 238) (1954)), Roberts's objection was properly overruled.

9. The State introduced four pre-autopsy photographs to illustrate the nature, location, and extent of the victim's fatal wound. Roberts contends the photographs should have been excluded because the medical examiner's testimony and an x-ray admitted in support of that testimony were sufficient to explain the wounds.

> However, if pre-autopsy photographs are relevant and material to any issue in the case, they are admissible even if they are duplicative and may inflame the jury. [Cit.] Photographs showing the extent and nature of the victim's wounds are material and relevant. [Cit.] This is not altered by the fact that the cause of death may not be in dispute.

*Smith v. State*, 280 Ga. 490, 492 (2) (629 SE2d 816) (2006). The trial court did not err in admitting into evidence the photographs to which Roberts objected.

10. The State produced as evidence a letter purportedly written by Roberts to a witness while Roberts was incarcerated. To establish authorship of the letter, the State presented the testimony of a questioned-documents examiner who testified that his examination of the letter and known exemplars of Roberts's handwriting led him to the opinion that Roberts wrote the letter. The examiner's written report to that effect was sent out with the jury over Roberts's objection.

> Georgia courts allow litigants to object to a written statement as a "continuing witness" to avoid placing undue emphasis on written testimony. This objection prevents the writing from going out with the jury to be read and reread during its deliberations. Instead, the written testimony is treated like oral testimony that the jury hears only once from a witness. (Citations and footnotes omitted.)

*Flournoy v. State*, 266 Ga. 618, 619 (469 SE2d 195) (1996) (Fletcher, P. J., concurring). The State contends the report was not subject to a continuing witness objection because it was admissible, pursuant to *Adams v. State*, 284 Ga. App. 534 (2) (644 SE2d 426) (2007), "as direct evidence of the manner in which a scientific test was conducted and of the results thereby obtained." The report, however, consisted only of conclusory statements that the examiner compared documents and was of the opinion the questioned document was written by the same person who wrote a document attributed to Roberts. That does not amount to evidence of the manner in which a test was conducted and

does not make the document original documentary evidence. Accordingly, we conclude the trial court erred in permitting the report to go out with the jury over Roberts's objection. However, considering the weight of the direct evidence against Roberts and the fact that the report was brief and conclusory and less detailed than the witness's oral testimony, we conclude it is highly probable that the error in permitting the report to go out with the jury did not contribute to the verdict and was, therefore, harmless. See *Kent v. State*, 245 Ga. App. 531 (3) (538 SE2d 185) (2000); *Gough v. State*, 236 Ga. App. 568 (2) (512 SE2d 682) (1999).

11. In a related enumeration of error, Roberts contends the admission of a photocopy of the letter attributed to him violated the best evidence rule.

> The best evidence rule requires the original of a writing to be produced when the writing is introduced to establish its contents. [Cits.] However, "OCGA § 24-5-4 (a) makes the best evidence rule inapplicable whenever the absence of the original writing is satisfactorily accounted for. OCGA § 24-5-21 provides that if a paper shall have been lost or destroyed, proof of the fact to the court shall admit secondary evidence. . . ." [Cit.]

*Summerour v. State*, 211 Ga. App. 65, 66 (1) (438 SE2d 176) (1993). In the present case, the State presented evidence that the original of the letter was lost during a relocation of the district attorney's office, and authenticated the photocopy with the testimony of the deputy who had intercepted and read the original letter. Under those circumstances, no abuse of the trial court's discretion appears and the admission of the photocopy was not error.

12. Roberts enumerates as error the trial court's refusal to give jury instructions on voluntary manslaughter, involuntary manslaughter, pointing a pistol at another, and accident. "A requested charge must be legal, apt, and precisely adjusted to some principle involved in the case and be authorized by the evidence. If any portion of the request to charge fails in these requirements, denial of the request is proper. [Cit.]" *Stokes v. State*, 281 Ga. 875, 877 (3) (644 SE2d 116) (2007).

There was no evidence of the provocation necessary to authorize a charge on voluntary manslaughter. *Riggins v. State*, 279 Ga. 407 (2) (614 SE2d 70) (2005) (charge on voluntary manslaughter must be supported by evidence defendant acted solely from passion resulting from serious provocation by victim). Evidence that the victim faced the window through which Roberts pointed the pistol and reacted to the presence of a gun pointed at him and a demand by Roberts to "give

it up" by attempting to close the window showed an apprehension of receiving a violent injury which obviated instructions on pointing a pistol and involuntary manslaughter. *Gardner v. State*, 263 Ga. 197 (7) (b) (429 SE2d 657) (1993) (no basis for charge on involuntary manslaughter or pointing a pistol at another when victim placed in reasonable apprehension of immediate violent injury). The requested charge on accident, "No person shall be found guilty of any crime committed by misfortune or accident where there was no criminal scheme, undertaking, or intention," was not authorized by the evidence at trial which showed only that the victim was killed during Roberts's effort to rob him at gunpoint. The trial court's refusal to give the requested charges was not error.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 9, 2007 —
RECONSIDERATION DENIED OCTOBER 29, 2007.

*Jeffrey L. Grube*, for appellant.

*Kelly R. Burke, District Attorney, Duncan M. Munn, Timothy M. Marlow, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Benjamin H. Pierman, Assistant Attorney General*, for appellee.