## S13A0209. JOHNSON v. THE STATE.
### (741 SE2d 627)

BLACKWELL, Justice.

Paris Leroy Johnson, Jr. was tried by a Walton County jury and convicted of the murder of Antonio Milton. Following the denial of his motion for new trial, Johnson appeals, contending that the trial court erred when it failed to charge the jury on voluntary manslaughter as a lesser included offense, when it allowed the State to cross-examine him about his failure to come forward and make a statement, and when it admitted testimony that impermissibly placed his character into evidence. Upon our review of the record and briefs, we see no error and affirm.[1]

1. Viewed in the light most favorable to the verdicts, the evidence shows that Milton was dating Jessica Smith, who remained friendly with Johnson, her ex-boyfriend. Johnson disapproved of Smith's new relationship, told her that he felt like hurting and killing somebody, and sent her this text message: "[I]f I can't have you, nobody can." On the evening of October 9, 2009, Smith went to the residence of Johnson and his mother to take a pregnancy test. When Smith started to leave, Johnson became angry, and when Milton came to the front door, Johnson became even angrier, slammed the door, and armed himself with a handgun. Smith convinced Johnson to put the gun away.

While Smith and Milton were talking at the door, Johnson walked past them to a truck where he spoke to some men about a marijuana transaction. It is undisputed that the only words exchanged

---

[1] The events that form the basis for the conviction occurred on or about October 9, 2009. Johnson was indicted on November 20, 2009 and charged with malice murder, felony murder, and aggravated assault. His trial commenced on February 14, 2011, and the jury returned its verdict on February 16, 2011, finding Johnson guilty on all counts. The verdict as to felony murder was vacated, the aggravated assault merged into malice murder, see *Malcolm v. State*, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993), and the trial court sentenced Johnson to imprisonment for life without parole for malice murder. Johnson filed a motion for new trial on February 25, 2011, and he amended it on July 13, 2012. The trial court denied the motion for new trial as amended on September 18, 2012. Johnson timely filed his notice of appeal on September 25, 2012, and the case was docketed in this Court for the January 2013 term and submitted for decision on the briefs.

at any time between Milton and Johnson were Milton's request for a cigarette and Johnson's negative answer. After Johnson twice returned to the house, he went back outside, struck Milton in the head with a baseball bat, chased him into the parking lot, knocked him to the ground, and struck him with the bat several more times. Milton was unarmed and had not threatened Johnson or made any aggressive movements toward him.

When the men in the truck asked Johnson why he had attacked Milton, Johnson said that Milton "shouldn't have come over here." Johnson told a neighbor that he had just knocked somebody out and not to call anyone, and he then dragged Milton across the parking lot. After police officers arrived and told Johnson that he would be detained so as to remove him from the crime scene, he responded that "it don't matter anyways, I'm going to jail[,]" and "I knew something was going to happen because he kept harassing me."

Milton died two days later, and the medical examiner testified that the cause of death was severe blunt-force trauma to the head from at least two impacts. Johnson testified that he had hit Milton once with the bat to scare him away because Smith had told Johnson that Milton previously made threats about harming Johnson and, as a result, Johnson feared for his own safety and that of his mother. But Johnson admitted that while Milton was outside Johnson's home, Milton did not yell at Johnson, threaten him or his mother, make aggressive movements, or pull a weapon.

Although Johnson does not dispute that the evidence is sufficient to sustain his conviction, we have independently reviewed the record, and we conclude that the evidence adduced at trial, including the eyewitness testimony of Smith and of two men who were in the truck, was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Johnson was guilty of murder. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). See also *Glover v. State*, 291 Ga. 152, 153 (1) (728 SE2d 221) (2012).

2. We next consider the contention that the trial court should have charged the jury, as Johnson requested, on voluntary manslaughter as a lesser included offense. A trial court is required to give such a charge on request "if there is slight evidence showing that the victim seriously provoked the defendant, causing the defendant to kill the victim 'solely as the result of a sudden, violent, and irresistible passion,' OCGA § 16-5-2 (a)." *Merritt v. State*, 292 Ga. 327, 331 (2) (737 SE2d 673) (2013) (citation and punctuation omitted). The evidence in this case shows, at most, that Milton had told Smith on prior occasions that he might harm Johnson, but Johnson was not present at the time of those threats. See *Howard v. State*, 288 Ga. 741, 745 (4)

(707 SE2d 80) (2011). It is undisputed that, while Milton was in Johnson's presence on October 9, 2009, Milton did not use threatening words, make aggressive movements, or pull a weapon. Under these circumstances, Johnson's response to the provoking incident was objectively unreasonable, and nothing in the evidence required a charge on voluntary manslaughter. See id. at 746 (4); *Robinson v. State*, 129 Ga. 336, 338 (2) (58 SE 842) (1907).

3. We turn now to the claim that the trial court improperly allowed the State to cross-examine Johnson about his failure to come forward and make a statement. Soon after the crime occurred, Johnson waived his *Miranda*[2] rights, was interviewed by a police investigator, and did give a statement. During cross-examination of Johnson, the prosecuting attorney elicited testimony that at no point during the interview or at any other time did Johnson ever indicate that he feared for his safety or the safety of his mother. Johnson then agreed that, at a hearing two weeks before trial, he testified for the first time about being afraid for his safety. And the prosecuting attorney asked him, "So, almost a year and a half went by before you ever mentioned anything about being in fear of your safety?" Johnson argues that by this cross-examination, especially the question just quoted, the State improperly commented on his silence and failure to come forward after his pretrial statement.

At trial, however, Johnson's lawyer did not object to the cross-examination of which he now complains until a bench conference that he requested two questions later. See *Izzo v. State*, 265 Ga. App. 143, 143 (1) (592 SE2d 915) (2004); *Hayward v. State*, 258 Ga. App. 566, 569 (2) (a) (574 SE2d 646) (2002); *Jolly v. Zarella*, 252 Ga. App. 130, 131-132 (555 SE2d 798) (2001). Georgia "has long followed the contemporaneous objection rule, which provides that counsel must make a proper objection on the record at the earliest possible time to preserve for review the point of error." *State v. Larocque*, 268 Ga. 352, 353 (489 SE2d 806) (1997) (citation omitted). See also *Whitehead v. State*, 287 Ga. 242, 246 (2) (695 SE2d 255) (2010) (standard practice requires a party to make an objection and obtain a ruling "before or as the evidence is admitted"). "The purpose of requiring a timely objection is to avoid placing improper information before the jury. Removing from a jury's consideration evidence it has heard is difficult at best and well nigh impossible after it has had time to sink in." *Martin v. State*, 281 Ga. 778, 780 (2) (642 SE2d 837) (2007) (citation and punctuation omitted). Because Johnson did not object at the time

---

[2] See *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

of the complained-of cross-examination, he has waived appellate review of this issue. See *Sanders v. State*, 289 Ga. 655, 659 (2) (715 SE2d 124) (2011).

Even if Johnson had made a timely objection, "[i]t was not improper for the prosecutor to cross-examine [him] regarding his failure to mention [his fear] to officers or others when he made his statement or at any other time before trial." *Stringer v. State*, 285 Ga. 842, 845-846 (4) (684 SE2d 590) (2009) (citations omitted). See also *Kendrick v. State*, 287 Ga. 676, 677-678 (2) (699 SE2d 302) (2010). Johnson chose to speak to the investigating officer without ever invoking his right to remain silent. Under the circumstances, the State's questions were proper inquiries into the inconsistency between his pre-trial statement and his testimony at trial. *Stringer*, 285 Ga. at 846 (4). "If [Johnson] has recently manufactured self-serving and exculpatory evidence, the jury surely was entitled to know of that possibility and weigh it in their deliberations." Id. (citations and punctuation omitted). Moreover, even if we assumed that the State's cross-examination did include improper comments on Johnson's silence, reversal of his conviction would not be warranted because the extensive eyewitness testimony and other evidence that proved his guilt and refuted his claim of self-defense was overwhelming. See *Collins v. State*, 289 Ga. 666, 668-669 (715 SE2d 136) (2011); *Pearson v. State*, 277 Ga. 813, 817 (5) (c) (596 SE2d 582) (2004).

4. Finally, we consider the contention that the trial court erroneously allowed impermissible character evidence when it admitted eyewitness testimony about Johnson's alleged involvement in a marijuana transaction.[3] The court viewed that evidence as part of the

---

[3] The State asserts that this issue is waived because, as the trial court noted in its order denying the motion for new trial, Johnson failed to object to the prosecuting attorney's questions about the drug deal. But Johnson did make an oral motion in limine that the trial court said it "would not grant." It is not clear, however, from our review of the entire colloquy, whether the trial court denied the motion or deferred a ruling. *Holland v. State*, 176 Ga. App. 343, 344 (3) (335 SE2d 739) (1985). Nevertheless, we will assume, for purposes of this appeal, that Johnson's motion in limine was denied and that he was therefore not required to renew his objection to evidence. See *Whitehead*, 287 Ga. at 247-248 (2). Cf. *Dasher v. State*, 285 Ga. 308, 311 (4) (676 SE2d 181) (2009) ("Where the trial court reserves ruling on a challenge to the admission of evidence, a defendant's subsequent failure to object to the testimony when it is admitted or to invoke a ruling by the trial court preserves nothing for appellate review.") (citations omitted); *Askew v. State*, 254 Ga. App. 137, 139 (2) (564 SE2d 720) (2002) (issue was not preserved where trial court was not inclined to admit the evidence but was not yet saying absolutely that it would be excluded). Although our new Evidence Code does not apply because this case was tried before January 1, 2013, see Ga. L. 2011, pp. 99, 214, § 101, we note that the new Evidence Code provides that "[o]nce the court makes a definitive ruling on the record admitting or excluding any evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve such claim of error for appeal." OCGA § 24-1-103 (a).

res gestae[4] of the crime for which Johnson was being tried. Under the old rules of evidence that apply here, we have said that

> [t]he State is entitled to present evidence of the entire res gestae of the crime. Even though a defendant is not charged with every crime committed during [or near the time of] a criminal transaction, every aspect of it relevant to the crime charged may be presented at trial. This is true even if the defendant's character is incidentally placed in issue.

*Johnson v. State*, 264 Ga. 456, 457 (1) (448 SE2d 177) (1994) (citations and punctuation omitted). A statement of an eyewitness as to what occurred shortly before or shortly after the commission of the murder, even if it shows the commission of an additional uncharged crime, generally was admissible under those rules as relevant res gestae evidence. *Roberts v. State*, 282 Ga. 548, 551 (6) (651 SE2d 689) (2007); *Johnson*, 264 Ga. at 457 (1).

In the present case, the challenged testimony was relevant to explain the presence of the truck and the testimony of its owner that he drove to a meeting with Johnson yet did not know him well enough to identify him in court, as well as to explain why Johnson kept leaving his residence, walking past Milton and Smith to the truck, and returning to the residence shortly before the murder. See *Roberts*, 282 Ga. at 551 (6); *Shealey v. State*, 257 Ga. 437, 438 (2) (360 SE2d 266) (1987). The challenged testimony was also relevant to Johnson's state of mind because it showed that his concern about Milton was not such that it prevented Johnson from leaving Milton at the front door so that Johnson could arrange a drug deal. See *Carter v. State*, 269 Ga. 891, 892 (3) (506 SE2d 124) (1998); *Frazier v. State*, 257 Ga. 690, 698 (16) (362 SE2d 351) (1987). Accordingly, the trial court did not err when it admitted testimony about the marijuana transaction even though it incidentally placed Johnson's character in issue. See *Roberts*, 282 Ga. at 551 (6). Moreover, even if the court did err when it admitted the testimony as part of the res gestae of the murder, the error is harmless because, as discussed above in Division 3, the evidence of Johnson's guilt was overwhelming and it is therefore highly probable that the admission of the challenged testimony did not contribute to the verdict. See *Walker v. State*, 282 Ga. 703, 705 (2) (653 SE2d 468) (2007).

*Judgment affirmed. All the Justices concur.*

---

[4] We observe that the new Evidence Code does not use the term "res gestae."

DECIDED APRIL 15, 2013.

*Anthony S. Carter*, for appellant.

*Layla H. Zon, District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Benjamin H. Pierman, Anne M. Kurtz, Assistant Attorneys General*, for appellee.

