296 Ga. 376
FINAL COPY

S14A1296. DURHAM v. THE STATE.

BLACKWELL, Justice.

Javon Durham was tried by a Bibb County jury and convicted of murder and other crimes related to the killing of Cornelius Baldwin. Durham appeals, contending only that the trial court erred when it allowed the State to introduce certain testimony. Upon our review of the record and briefs, we find no error, and we affirm.[1]

1. Viewed in the light most favorable to the verdict, the evidence shows that, around 3:00 on the afternoon of January 9, 2010, Baldwin and his girlfriend, Sharon Dotson, were preparing to leave Baldwin's home in Macon so that they could pick up Dotson's older children from school. Dotson put her

---

[1] The crimes were committed on January 9, 2010. Durham was indicted on March 30, 2010, and he was charged with felony murder, aggravated assault, and two counts of armed robbery. Durham was tried beginning on January 26, 2011, and the jury returned its verdict two days later, finding Durham guilty on all counts. The aggravated assault merged with the felony murder, see Malcolm v. State, 263 Ga. 369, 372-374 (5) (434 SE2d 479) (1993), and on February 18, 2011, Durham was sentenced to imprisonment for life for the felony murder and concurrent terms of life imprisonment for each count of armed robbery. Durham timely filed a motion for new trial, and he later amended it. The trial court denied his motion on October 31, 2013, and Durham filed a notice of appeal on November 27, 2013. The case was docketed in this Court for the September 2014 term and submitted for decision on the briefs.

two younger children in the bac kseat of Baldwin's vehicle. As Dotson got into the front passenger seat, she saw a purple car pull up to the home. Dotson heard a gunshot, and she saw a man get out of the purple car and shoot at Baldwin. Baldwin suffered gunshot wounds to his right arm and chest, with the chest wound involving a puncture of his diaphragm and leaving it difficult for him to speak.

The gunman approached Baldwin, and as he did, Dotson heard Baldwin say, "Yavon, man, why [are] you doing this . . . ?" The assailant demanded that Baldwin give over all his money, and Baldwin gave the assailant his money belt and his coat, in the pocket of which was an envelope containing a "large sum of money." The assailant then approached Dotson and demanded her cell phone, which she provided to him.

Dotson used Baldwin's cell phone to call 911, and Baldwin again stated that "Yavon" shot him. Baldwin was still responsive when paramedics arrived on the scene approximately five minutes later, and he told a paramedic in the ambulance that he was shot by his "homeboy Javon." Baldwin died at the hospital as a result of the injuries he sustained in the shooting.

2

Later that day, and into the following morning, Detective David Patterson contacted persons whose phone numbers he found on Baldwin's cell phone. During this process, Patterson spoke with Jamaal Ragins, who had been acquainted with both Durham and Baldwin for several years. When Patterson asked Ragins if Baldwin knew anyone named "Yavon," Ragins responded that Baldwin knew Javon Durham, and Ragins further explained that Baldwin had a habit of pronouncing the letter "J" as a "Y," so that he would refer to Durham as "Yavon." That same day, Patterson showed Dotson a photo lineup that included Durham's photograph, and Dotson identified Durham as the assailant.

Patterson's investigation also revealed that Durham's girlfriend, Genisha Thomas, drove a purple Ford Fusion. Dotson later identified that car as the one driven by Durham when he shot Baldwin. Thomas initially provided false information to police investigators, but she later admitted that Durham was in sole possession of her purple car while she was getting her hair braided at a beauty shop, beginning around 10:00 on the morning of January 9. After the shooting, Durham parked the purple car at Macon State College[2] and walked to

[2] Macon State College is now known as Middle Georgia State College.

Thomas's apartment, which was nearby. He told Jayne High, who was one of Thomas's roommates, that he had gotten into an altercation in which shots were exchanged with some of his "homeboys." High agreed to drive Durham in her car to pick up Thomas at the beauty shop, and both High and Thomas saw that Durham had placed a black handgun on the floorboard of High's car. Durham told Thomas that he had "got into it with some boys" and fired some shots at them, but he was not sure if anyone was hit. Thomas acknowledged that Durham then took her shopping in Warner Robins and that Durham — who had no job — used cash to buy her a new laptop computer, clothes, and shoes. That evening, High agreed to let Durham use her ID to check into a hotel (which he again paid for with cash). And Durham took Thomas, High, and another roommate — Jaydalia Bennett — shopping at a mall in Morrow the next day, where he used several hundred dollars in cash to buy himself clothes and shoes. That evening, Durham called High so that she would use her ID to let him check into a different hotel, and when High saw him, he gave her $2,000 in cash and told her to give it to Thomas. Thomas admitted that she wrapped up the money and hid it in a closet.

Durham does not dispute that the evidence is sufficient to sustain his convictions, but consistent with our usual practice in murder cases, we have independently reviewed the record to assess the legal sufficiency of the evidence. When we consider the legal sufficiency of the evidence, "we must view the evidence in the light most favorable to the verdict and leave questions of credibility and the resolution of conflicts in the evidence to the jury." Bradley v. State, 292 Ga. 607, 609 (1) (a) (740 SE2d 100) (2013). So viewed, we conclude that the evidence adduced at trial was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Durham was guilty of felony murder and the armed robberies of both Baldwin and Dotson. Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Durham claims that the trial court violated his Sixth Amendment right to confrontation when it allowed several statements made by Baldwin to be introduced at trial. First, the trial court allowed the jury to hear a recording of the 911 call in which Baldwin could be heard saying that it was "Yavon" who shot him. Second, the trial court allowed Patterson to testify that he overheard Baldwin tell the paramedic in the ambulance that he was shot by his "homeboy Javon." Durham now claims that both of these statements were testimonial in

5

nature and therefore inadmissible under the Confrontation Clause of the Sixth Amendment.[3] But Durham's argument before the trial court was not that these statements were inadmissible under the Confrontation Clause, but rather that they were inadmissible hearsay. Prior to trial, Durham filed a "Motion in Limine to Exclude Hearsay Statements," and at the hearing on that motion, Durham argued that the statements did not qualify for any exemption under the hearsay rule. The trial court disagreed, finding that the statements at issue were dying declarations, and Durham offered no other objection to their admissibility.

Because Durham did not raise a claim under the Confrontation Clause until his appeal, he has failed to properly preserve such a challenge for appellate review. "There is a distinct difference between a challenge to the admission of evidence based upon the Confrontation Clause and that based upon an exception to the hearsay rule," such as the exception for dying declarations. Walton v. State, 278 Ga. 432, 434 (1) (603 SE2d 263) (2004) (citation omitted).

---

[3] Durham does not challenge the admissibility of the statement Baldwin made immediately after being shot, in which he asked "Yavon, man, why [are] you doing this . . .?" In a separate enumeration of error, Durham challenges as inadmissible hearsay the testimony provided by Ragins about a statement made to him by Detective Patterson, but Durham did not raise any objection to the admissibility of that statement at trial or in his pretrial motion. As a result, Durham has waived appellate review of this issue. See Johnson v. State, 292 Ga. 785, 787-788 (3) (741 SE2d 627) (2013).

> Although the rules concerning the Confrontation Clause and hearsay evidence generally protect similar values, they do not always prohibit the same evidence. The Confrontation Clause may bar the admission of some evidence that would be admissible under an exception to the hearsay rule. The converse is equally true: merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied.

Yancey v. State, 275 Ga. 550, 557 (3) (570 SE2d 269) (2002) (citations and punctuation omitted). Because Durham's only argument before the trial court was that the statements at issue were inadmissible hearsay, we are foreclosed from considering his claim under the Confrontation Clause.[4]

3. Finally, Durham alleges that the trial court erred when it permitted Ragins to testify that Baldwin had a habit of pronouncing the letter "J" as a "Y" and that he would pronounce Durham's name as "Yavon" instead of "Javon." According to Durham's argument on appeal, the State failed to show that Ragins was qualified to provide his opinion of Baldwin's speech patterns. But Durham did not make any objection to this testimony before the trial court, and he has

---

[4] Even if it were otherwise, the United States Supreme Court has found that "admission of a dying declaration was an exception to the general rule that a prior opportunity to cross-examine was a necessary condition for admissibility of testimonial statements." Walton, 287 Ga. at 434-435 (1) (citing to Crawford v. Washington, 541 U. S. 36 (124 SCt 1354, 158 LE2d 177) (2004)).

waived this claim on appeal. See <u>Johnson v. State</u>, 292 Ga. 785, 787-788 (3) (741 SE2d 627) (2013).[5]

<u>Judgment affirmed. All the Justices concur.</u>

Decided January 20, 2015.

Murder. Bibb Superior Court. Before Judge Christian, Senior Judge.

<u>Green B. Moore III, Sean I. Brodie</u>, for appellant.

<u>K. David Cooke, Jr., District Attorney, Shelley T. Milton, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Clint C. Malcolm, Assistant Attorney General</u>, for appellee.

---

[5] Even if it were otherwise, a layperson may provide his opinion about the distinctive mannerisms of a person whom he has observed. See <u>Dawson v. State</u>, 283 Ga. 315, 320-321 (4) (658 SE2d 755) (2008).