S12A1978. SMITH v. THE STATE.
(740 SE2d 158)

HUNSTEIN, Chief Justice.

In *Smith v. State*, 284 Ga. 33 (663 SE2d 155) (2008), this Court reversed Appellant Tavaris Smith's murder conviction, finding that the trial court had erred in classifying Smith's sleepwalking defense as an insanity defense. Id. at 35-36 (2). Following retrial, Smith was again convicted of malice murder and sentenced to life imprisonment. Smith now challenges his second conviction on grounds of insufficiency of the evidence, trial counsel ineffectiveness, and errors in evidentiary matters and jury instructions. Finding no error, we affirm.[1]

1. Viewed in the light most favorable to the verdict, the evidence adduced at trial established as follows. On June 5, 2003, Smith's wife was killed by a single gunshot to the back of her head while she was asleep in her bed. Smith called 911 at approximately 1:30 a.m. to report the shooting but was not present at their home when emergency responders arrived. At the scene, a .9 mm pistol was discovered under the pillow next to the victim, aimed towards the back of her head. The pillow on which the victim's head had been resting bore bullet entry and exit holes. A single shell casing was found on the floor near the bed, and the gun had a live round in its chamber.

In a statement a few hours after the shooting, Smith told police that he kept the gun under his pillow for safety. He reported that he was awakened that night by what he thought was a gunshot; jumped out of bed and checked the house but found nothing; and returned to the bedroom, where he turned on the light to find his wife shot dead and his gun under the pillow next to her. At trial, however, Smith testified that he was awakened that night by a noise and jumped out

---

[1] The shooting occurred on June 5, 2003. On August 26, 2003, Smith was indicted by the Bibb County grand jury on a single count of malice murder. Following the reversal of his first conviction by this Court on June 30, 2008, Smith was retried on December 7-10, 2009. Smith was again convicted of malice murder and sentenced to life imprisonment. Smith filed a timely motion for new trial on December 16, 2009, which, through new appellate counsel, was amended on March 23, 2011. Following a hearing, the motion for new trial was denied on August 15, 2011. Smith filed a timely notice of appeal on September 14, 2011. The appeal was docketed to the September 2012 term of this Court and thereafter submitted for decision on the briefs.

of bed, grabbing his gun, which went off as his hands were underneath his pillow. He testified that he then proceeded to check the rest of the house and came back to discover that the victim had been shot.

A crime scene technician testified that the entry and exit holes in the pillow, the straight path of the bullet, the gunpowder markings on the underside of the pillow, and the absence of any other gunshot residue all supported the theory that the shooter had folded a pillow around the back of the victim's head and shot her through the pillow. Various State's witnesses testified that, had the gun discharged from underneath Smith's pillow, it was unlikely the shell casing would have ejected and a second round cycled into the gun's chamber; rather, the casing would have stuck in the chamber. The State's firearms expert testified that the gun was in good operating condition and required several pounds of applied force to be fired.

Testimony from the victim's mother, two close friends, and a co-worker revealed that Smith was jealous, possessive, and, at times, physically and emotionally abusive. These witnesses also testified that the victim had been contemplating divorce and that the couple had actually discussed this prospect. The victim's co-worker, Pam Ford, testified that on the day before her murder, the victim had been arguing with Smith about a work-related trip she was planning to take without him and that, when Ford saw the victim that day, she seemed "despondent" and told Ford that she was "tired" of her situation with Smith.

The evidence was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Smith was guilty of the malice murder of his wife. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Though Smith testified that he did not intend to kill his wife and his trial expert testified that the murder weapon was defective and could have discharged accidentally, " '[i]t was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (Citation omitted.) *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009).

2. Smith contends that his trial counsel rendered ineffective assistance in various respects. To establish ineffective assistance, Smith must show both that his counsel performed in a professionally deficient manner and that there is a reasonable probability that, but for such deficiency, the result of his trial would have been different. *Sanders v. State*, 290 Ga. 445 (4) (721 SE2d 834) (2012) (citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)). On appeal, we accept the trial court's factual findings unless they are clearly erroneous, but we review the trial court's legal conclusions de novo. *Bright v. State*, 292 Ga. 273 (2) (736 SE2d 380) (2013).

(a) Smith maintains that trial counsel rendered deficient performance by refusing to assert a sleepwalking defense. At the new trial hearing, trial counsel testified that he considered asserting the sleepwalking defense as had been done by prior counsel at Smith's first trial, but that during his investigation he became aware of reported defects in the model of gun used in the shooting and located experts who would testify about these defects and problems they found in their examination of the actual murder weapon. Based on his past experience as a criminal defense lawyer, counsel concluded that the jury was more likely to believe a defense based on the accidental discharge of a defective weapon than one based on sleepwalking. Though Smith himself favored the sleepwalking defense, it was trial counsel's prerogative to decide, after his many consultations with Smith on the issue, which defense theory to pursue. See *Smith v. State*, 283 Ga. 237 (2) (b), (c) (657 SE2d 523) (2008) (strategic decisions regarding defense theories should involve consultation with client but are ultimately to be made by trial counsel). Given the strong presumption of reasonableness afforded to trial counsel's decisions, see *Hargrove v. State*, 291 Ga. 879 (2) (734 SE2d 34) (2012), Smith has failed to overcome his burden to establish deficient performance in this respect. See *Smith*, 283 Ga. at 239 (2) (b), (c) (counsel's reasonable decisions regarding defense strategy do not constitute deficient performance).

(b) Smith also faults counsel's decision not to seek bond after the reversal of Smith's initial conviction. Trial counsel testified that, based on his prior experience, the trial court was unlikely to grant bond under the circumstances of Smith's case. We cannot say that this reasoned decision was professionally deficient, nor is it conceivable that the outcome of the trial would have been different had bond been granted.

3. Smith contends that the trial court erred in refusing to conduct a full evidentiary hearing, following reversal of the first conviction, regarding the admissibility of Smith's custodial statement and the victim's hearsay statements. Although Smith is correct that a reversal by this Court sets aside the prior trial proceedings and requires the case to be heard again, the trial court is not required to rehear all pretrial motions as though they had never before been considered. Trial courts "retain[ ] broad discretion over interlocutory evidentiary rulings which may be modified at any time until entry of final judgment." *Ritter v. State*, 272 Ga. 551, 553 (2) (532 SE2d 692) (2000). It follows from this principle that, upon the grant of a new trial, the trial court has the authority to reconsider any of its previous rulings that have not been adjudicated on appeal. Id. at 553 (2) & n. 4. The fact that trial courts have this authority does not, however, require them

to rehear pretrial motions "from scratch." Here, after the case was returned for a new trial, the trial court informed the parties that it would review the transcripts from the first hearing on Smith's motions to exclude the contested statements and allow the parties to present any additional evidence they wished to offer in support of their respective positions. The State opted to rely on the evidence it had previously presented; Smith called one additional witness, who testified in regard to Smith's custodial statement; and counsel for both parties argued the motions, after which the court took the motions under advisement. The trial court's handling of the motions was entirely appropriate and provides no basis for a finding of error.

4. Smith also contends that the trial court erred in holding that his custodial statement was admissible. In determining the admissibility of a defendant's statement, the trial court must find by a preponderance of the evidence, considering the totality of the circumstances, that the defendant's waiver of his rights was knowing and voluntary. *Watkins v. State*, 289 Ga. 359 (4) (711 SE2d 655) (2011). On appeal, we accept the trial court's factual findings unless clearly erroneous but review its legal conclusions de novo. Id. Here, Smith claims his statement was obtained improperly, asserting that an attorney that had been dispatched by Smith's father to assist him was denied access to him at the detective bureau at which he was questioned.

The record reflects that Smith was brought to the detective bureau a few hours after the shooting, where he was read his *Miranda*[2] rights. Smith initially told police he did not want to speak with them without a lawyer present, and the investigator ceased the interrogation and commenced filling out a booking sheet, asking only routine questions seeking basic biographical information. See *Franks v. State*, 268 Ga. 238 (486 SE2d 594) (1997) (questioning seeking only basic biographical data for purpose of completing arrest form is not an "interrogation"). Approximately five minutes later, on his own volition and without any prompting, Smith told the investigator he had changed his mind and was willing to talk without an attorney. Only after Smith signed a written waiver of rights form did the investigator begin questioning Smith about the crime. See *Devega v. State*, 286 Ga. 448 (4) (e) (689 SE2d 293) (2010) (further questioning by officers does not violate suspect's rights where suspect, after invoking his right to counsel, voluntarily reinitiates communications with police). There is no evidence, nor even any allegation, that Smith had any knowledge during his time at the detective bureau that an attorney

---

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

was attempting to make contact with him. See *Moran v. Burbine*, 475 U. S. 412, 422 (II) (106 SC 1135, 89 LE2d 410) (1986) (facts unknown to defendant at time he waives rights cannot bear on validity of waiver). Under these circumstances, the trial court did not err in allowing Smith's custodial statement to be admitted at trial. Id.

5. We reject Smith's assertion that the trial court erred in allowing certain evidence to go out with the jury during deliberations. A trial court's evidentiary rulings must be affirmed absent an abuse of discretion. *Miller v. State*, 284 Ga. 498 (2) (668 SE2d 690) (2008). During the testimony of police Lieutenant Jeff Pettis, who processed the crime scene, the State offered into evidence the bloody pillow on which the victim's head was resting when police arrived at the scene. A dowel rod was inserted through the pillow, as Lt. Pettis explained, to demonstrate the trajectory of the bullet. While the pillow by itself was "real" evidence, the dowel rod inserted in the pillow was "demonstrative" evidence, because it had no probative value in itself but rather served as a visual aid to help clarify Lt. Pettis' testimony. See Agnor's Georgia Evidence, § 10:16 (4th ed. 2012). We have held that "demonstrative evidence is to be received into evidence and go out with the jury during deliberations." *Moss v. State*, 274 Ga. 740, 742 (2) (559 SE2d 433) (2002). The trial court thus did not abuse its discretion in admitting this evidence or in allowing it to go out with the jury.

6. Smith next asserts that the trial court erred in refusing to instruct the jury on misdemeanor involuntary manslaughter. While the court did charge the jury on felony involuntary manslaughter, see OCGA § 16-5-3 (a), it rejected Smith's request to charge on the misdemeanor-level offense. See OCGA § 16-5-3 (b). The crime of misdemeanor involuntary manslaughter is defined as an unintentional homicide "by the commission of a lawful act in an unlawful manner likely to cause death or great bodily harm." Id. Smith contends that, because the trial court saw fit to include a jury charge on accident, then it necessarily should also have charged on misdemeanor involuntary manslaughter. However, given that Smith's accident defense was premised on the contention that the gun was defective and discharged accidentally, Smith's version of events did not support a finding of "a lawful act in an unlawful manner." Id. The trial court thus properly refused to give the requested charge.

7. Finally, Smith contends that the trial court erred in permitting the State to call a firearms expert in rebuttal following the testimony of the defense's firearms expert. The defense expert testified that he had examined the gun used in the shooting and concluded that it had defects that could have caused it to discharge accidentally. The State's rebuttal expert testified that his examination of the gun had uncovered no defects and that other forensic evidence suggested that

the gun had been fired while being pressed into the pillow. Trial courts have broad discretion in deciding whether to permit the State to introduce testimony after the defendant has closed his evidence. *Smith v. State*, 260 Ga. 746 (1) (399 SE2d 66) (1991). Absent an abuse of that discretion, we will not reverse a decision to allow such testimony, even if it was not strictly in rebuttal. Id. at 748. We find no abuse of discretion here, and this enumeration thus must fail.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 18, 2013.

*Jonathan P. Waters*, for appellant.

*Gregory W. Winters, District Attorney, Nancy S. Malcor, Dorothy V. Hull, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Kenneth W. Mishoe, Assistant Attorney General*, for appellee.