296 Ga. 465
FINAL COPY

S14A1657.  THE STATE v. SIMS.

BENHAM, Justice.

The State appeals the trial court's decision to grant appellee Steve A. Sims, Jr.'s motion for new trial in regard to his convictions and sentences for felony murder and possession of a firearm during the commission of a felony.[1] For reasons set forth below, we affirm.

1. The evidence viewed in a light most favorable to the jury's verdict shows that several eyewitnesses saw appellee shoot Shawn Hancock after Hancock had interjected himself into an argument Sims was having with his ex-girlfriend K. M.  K. M. testified that Hancock was like her brother.  A week

---

[1] The crimes occurred on  March 10, 2012.  On March 29, 2012, a Stephens County grand jury returned a true bill of indictment charging appellee with malice murder, felony murder, aggravated assault, possession of firearm by a convicted felon, and possession of a firearm during the commission of a felony.  Appellee was tried before a jury from September 24, 2012, to September 28, 2012, and the jury acquitted appellee of malice murder and aggravated assault, but found him guilty on the remaining charges.  The jury also found appellee guilty of voluntary manslaughter as a lesser included offense of malice murder, but that count was vacated as a matter of law.  On October 25, 2012, the trial court sentenced appellee to a life sentence for felony murder and five years to be served consecutively for possession of a firearm during the commission of a felony.  The count of possession of a firearm by a convicted felon merged into the felony murder conviction.  Appellee moved for a new trial on October 5, 2012, and amended his motion on November 11, 2013.  The trial court heard the motion on November 13, 2013, and granted the motion on May 16, 2014.  The State filed a timely appeal on June 13, 2014, and the case was docketed to the September 2014 term of this Court.  The case was orally argued on October 7, 2014.

before the shooting outside the home of appellee's grandmother,[2] appellee and Hancock had also gotten into an argument regarding appellee's relationship with K. M., but no physical altercation occurred, and Hancock left after appellee's grandmother threatened to call police. On the night of the shooting, K. M. was driving in her car with Hancock, her mother, and two friends when she spotted appellee in his car with a woman. K. M. followed appellee to his residence. K. M. parked in the street and got out of her vehicle to confront appellee, and the two argued. During the argument, K. M. slapped appellee. Hancock, who had been watching the argument from the car, got out of the vehicle and tried to encourage K. M. to leave. The situation became heated, and Hancock and appellee began to shove and push each other. K. M.'s mother testified she saw appellee and Hancock "swinging" at each other, but could not say whether any blows landed. The evidence showed Hancock was taller and three times heavier than appellee. All eyewitnesses testified Hancock was unarmed during the altercation.[3] Witnesses said appellee went into his grandmother's residence,

---

[2] Appellee lived at his grandmother's house with his father and grandmother.

[3] Although authorities retrieved a pocketknife from Hancock's pocket before his body was sent for autopsy, there was no evidence that Hancock pulled out the knife or threatened anyone with the knife during the altercation with appellee.

came back outside with a gun in his hand and shot Hancock several times. The medical examiner testified that Hancock had at least four gunshot wounds, but was unable to say exactly how many bullets caused the wounds. Eyewitnesses testified they heard two to three gunshots. The medical examiner stated there was no stippling or gun residue on Hancock's clothing or on his body, indicating the shots were not made at close range. The medical examiner concluded that Hancock died from a gunshot wound to the chest piercing his heart and lung.

An agent with the Georgia Bureau of Investigation (GBI) interviewed appellee for an hour shortly after his arrest. The agent testified he did not notice any injury to appellee's face at the time of the interview. The State played an audio recording of appellee's interview with the GBI agent. During that interview, appellee initially denied having a gun or shooting the victim. When confronted with the knowledge that the agent had spoken with his father at the scene, appellee admitted to shooting the victim. Appellee told the agent Hancock hit him no more than three times in the face. He said the first blow was weak, that the second blow made him "dizzy," and he was not sure about whether there was a third blow. After the second blow, he said he did not

believe he could "beat" Hancock and he did not want to be "laying on the ground" in front of his grandmother and his grandmother having to "pick [him] up." When asked where he "ha[d]" the gun used to shoot Hancock, appellee said it was under his grandmother's couch.[4] Appellee never denied going inside the house to get the gun after Hancock hit him.

During the interview with the GBI agent, appellee was unaware that Hancock was deceased. At trial, witnesses testified that once Hancock was shot, he was able to sit down in K. M.'s car. At that point, all of K. M.'s passengers got back into the vehicle and drove off to take Hancock to the hospital. K. M., pulled over a few blocks away, however, and called 911 because Hancock had stopped breathing. Appellee told the GBI agent that after the shooting he

---

[4] The audio recording and transcript of appellee's interview with the GBI agent shows in relevant part:

> [APPELLEE]: When he hit me, the second blow kinda got me a little dizzy and I don't know if he hit me a third time after the second one and I felt like I stumbled.
> [GBI AGENT]: Um-hum.
> [APPELLEE]: That's when I pulled the gun out on him.
>                     . . .
> [GBI AGENT]: Where did you have the gun at?
> [APPELLEE]: Where did I have the gun at?
> [GBI AGENT]: Yeah.
> [APPELLEE]: Uhhh, [i]t was under my grandmother's couch[.]
> [GBI AGENT]: Okay. So after [Hancock] hit you, you went in and pulled it out from under the couch? Did grandma know that you had the gun in her house? She didn't did she?
> [APPELLEE]: Mmm-mmm [negative].

4

dropped the gun and thought about fleeing, but that he ultimately went inside the house, where police arrested him. When the GBI agent interviewed appellee's father at the scene, he denied having any knowledge about a gun or the whereabouts of such a gun. When authorities confronted appellee's father a second time, however, he led them to a cousin's house where he had taken the gun minutes after the shooting.

The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find appellee guilty beyond a reasonable doubt of the crimes for which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. The State contends the trial court erred when it granted appellee's motion for new trial on the ground that trial counsel rendered ineffective assistance when he failed to object to comments made by the State during opening argument referencing appellee's pre-arrest silence and failure to come forward to police after the shooting. The relevant comments made by the prosecutor during his opening statement were as follows:

- The evidence will also be that Steve Sims never called the police at any time, never called 911, nor did anybody

5

associated with him, not to get help for Mr. Hancock or to report what had just happened. He never called police.

- You will hear that after the shooting, Mr. Sims didn't call 911 or the police. . . . You will also hear that when the police came in Mr. Sims' grandmother's house to come find out what's going on, he doesn't say, let me tell you what's happened. He doesn't say, I did what I had to do. He said, what's this all about. A man's shot. There's a man dead. There's a family member gone. And he says, what's this all about?

- The evidence will be that Steve Sims went inside, got the gun, and came back out, that he wasn't supposed to possess, and killed Shawn Hancock. Steve Sims never called the police to get help for Shawn Hancock or to tell what happened. He attempted to avoid responsibility by pretending as if he hadn't shot anybody and he wasn't really sure what happened. And, again, that's important, because we're going to be arguing to you that if Mr. Sims wants to claim self-defense, then you just lay it out. You just tell it. You tell what happened. There's no reason that you have to be untruthful, that you can't be candid.

The trial court, citing to several of this Court's precedents including <u>Mallory v. State</u>, 261 Ga. 625 (409 SE2d 839) (1991),[5] implicitly found that when the prosecutor made the above-referenced comments, he violated the "bright-line rule in Georgia" that "the State may not comment on either a defendant's silence

---

[5]<u>Mallory</u> has been overruled on grounds unrelated to this case. See <u>Clark v. State</u>, 271 Ga. 6 (5) (515 SE2d 155) (1999).

prior to arrest or failure to come forward voluntarily." Sanders v. State, 290 Ga.

637 (4) (723 SE2d 436) (2012). The trial court determined that trial counsel

was deficient, pursuant to Strickland v. Washington, 466 U.S. 668 (III) (104 SCt

2052, 80 LE2d 674) (1984), for failing to object to the comments and that

appellee was prejudiced therefore.

In order to prevail on a claim of ineffective assistance of counsel,

appellant

> must show counsel's performance was deficient and that the
> deficient performance prejudiced him to the point that a reasonable
> probability exists that, but for counsel's errors, the outcome of the
> trial would have been different. A strong presumption exists that
> counsel's conduct falls within the broad range of professional
> conduct.

(Citation and punctuation omitted.) Pruitt v. State, 282 Ga. 30, 34 (4) (644

SE2d 837) (2007). Whether a trial attorney renders constitutionally ineffective

assistance is a mixed question of law and fact. Hulett v. State, 296 Ga. 49 (5)

(766 SE2d 1) (2014). When reviewing a trial court's decision to grant a motion

for new trial based on ineffective assistance of counsel, we defer to the trial

court's findings of fact unless clearly erroneous, but owe no such deference to

7

its conclusions of law which we apply independently to the facts. Id.; State v. Worsley, 293 Ga. 315, 324 (3) (745 SE2d 617) (2013).[6]

(a) The State contends the trial court erred because the comments at issue did not violate Mallory, supra, or its progeny, and so there was no valid basis for trial counsel to object or be found deficient in his performance. We disagree. Since Mallory was decided in 1991, this Court has unequivocally held:

> It is a bright-line rule in Georgia that the State may not comment on either a defendant's silence prior to arrest or failure to come forward voluntarily. [Cits.] Finding such comments to be far more prejudicial than probative, this Court has determined that they are not to be permitted even in situations in which the defendant has not received Miranda warnings or takes the stand in his own defense. [Cit.]

Sanders v. State, 290 Ga. 637 (4) (723 SE2d 436) (2012). The fact that appellee never invoked his right to silence upon being arrested and subject to interrogation does not necessarily vitiate this rule.[7] Mallory focuses on commentary on a defendant's conduct between the time of the crime and prior

---

[6] The State's citation to State v. James, 292 Ga. 440 (738 SE2d 601) (2013) is inapplicable because that case only involved review of a question of law, not a mixed question of law and fact such as a claim for ineffective assistance of counsel.

[7] To the extent Rogers v. State, 290 Ga. 401 (721 SE2d 864) (2012); Gilyard v. State, 288 Ga. 800 (708 SE2d 329) (2011); Stringer v. State, 285 Ga. 842 (684 SE2d 590) (2009); or any other opinion by the appellate courts of this state may be interpreted to hold that Mallory never applies when a defendant has not invoked his right to remain silent, such interpretation is disapproved.

8

to arrest. The cases cited by the State to argue that <u>Mallory</u> does not apply are distinguishable inasmuch as they concern commentary or questioning by the State exploring inconsistencies in a defendant's pre-trial statements to authorities. See, e.g., <u>Rush v. State</u>, 294 Ga. 388 (2) (a) (754 SE2d 63) (2014); <u>Johnson v. State</u>, 292 Ga. 785 (3) (741 SE2d 627) (2013); <u>Gilyard v. State</u>, 288 Ga. 800 (2) (708 SE2d 329) (2011); <u>Stringer v. State</u>, 285 Ga. 842 (4) (684 SE2d 590) (2009); <u>McMichen v. State</u>, 265 Ga. 598 (11) (a) (458 SE2d 833) (1995). The comments at issue here are not limited to noting inconsistencies in appellee's pre-trial statements to authorities. Rather the comments expressly emphasize that appellee failed to call police after he shot Hancock and prior to being arrested. This violated the bright-line rule of <u>Mallory</u>. See <u>Wilson v. State</u>, 295 Ga. 84 (3) (757 SE2d 825) (2014).

At the motion for new trial hearing, trial counsel testified his failure to object to the prosecutor's improper opening comments was an oversight unrelated to any trial strategy. The trial court was correct in determining that trial counsel rendered deficient performance when he failed to object to such improper comments. <u>Thomas v. State</u>, 284 Ga. 647 (3) (a) (670 SE2d 421) (2008) ("Because the prosecutor's conduct violated <u>Mallory v. State</u>, supra,

9

counsel's performance was deficient to the extent he did not object."); <u>Lampley v. State</u>, 284 Ga. 37 (2) (b) (663 SE2d 184) (2008).[8]

(b) In support of its finding of prejudice, the trial court stated:

Here, the District Attorney's comments during opening statements encouraged the jury to view [appellee's] comments and actions as indications of his guilt. [Appellee's] defense relied on the premise that he acted in self-defense and was justified in his actions. Evidence presented at trial showed that the victim, who was 6 [feet] 5 [inches] tall and weighed 357 pounds, was much larger than [appellee]. The incident occurred outside [appellee's] grandmother's home where he lived. [Appellee's] father and grandmother were in the house. Evidence was also introduced that the two had an altercation prior to the night of the shooting and that the victim had been told not to return to the property. Additionally, there was evidence that the victim punched [appellee] several times before the victim was shot. There was conflicting evidence whether [appellee] acted in self-defense; and the District Attorney's comments during opening statements, insinuating [appellee's] pre-arrest silence and failure to come forward indicated he did not act in self-defense, possibly influenced the verdict. [Cit.] Ultimately, the District Attorney's comments may have encouraged the jury to view [appellee's] silence and actions as indications of his guilt, prejudiced the defense, and created a reasonable probability that the outcome of the trial could have been different.

---

[8] We note that, while the prosecutor's comments regarding appellee's failure to contact police *after shooting the victim and prior to arrest* were improper, any commentary or questioning by the State concerning appellee's failure to contact police *prior to shooting the victim*, is not barred by <u>Mallory</u> and its progeny. Therefore, the prosecutor's comments during his closing argument to the effect that appellee, after the physical altercation with Hancock, twice walked past a phone in his grandmother's house when retrieving the gun used during the shooting and did not use the phone or take any other action to contact police about Hancock or K. M. and her other companions being on his grandmother's property in the middle of the night, were not improper.

This analysis is sound. Appellee's sole defense was justification. The prosecutor's repeated improper comments at the very beginning of the trial left the jury with the initial impression that appellee could be found guilty based on his failure to contact police after the shooting. Such an inference of guilt is what our ruling in Mallory was designed to prevent. See Collins v. State, 289 Ga. 666, 668 (715 SE2d 136) (2011). It is not unreasonable to surmise that such an initial impression of guilt likely tainted the entire trial. Also, upon reviewing the record, we agree with the trial court's assessment that the evidence presented on the self-defense issue was somewhat conflicting[9] such that the jury may have been influenced to appellee's detriment by the prosecutor's improper comments. Accordingly, we will not disturb the trial court's finding of prejudice in this case.

3. Finally, we note that Mallory was decided not on constitutional grounds but rather based on former OCGA § 24-3-36. See Mallory, supra, 261 Ga. at 630. When this case is retried, the new Evidence Code will apply. We express no opinion about the continuing validity of Mallory under the new

---

[9] Witnesses differed as to whether there was a second altercation after appellee came back out with the gun or whether appellee simply came out with the gun and fired. There was also conflicting evidence as to whether appellee was injured during his altercation with Hancock.

11

Evidence Code. See Romer v. State, 293 Ga. 339, 342-343 & n. 4 (745 SE2d 637) (2013).

Judgment affirmed. All the Justices concur.

Decided February 2, 2015.

Murder. Stephens Superior Court. Before Judge Caudell.

Brian M. Rickman, District Attorney, Richard K. Bridgeman, Assistant District Attorney, for appellant.

The Steel Law Firm, Brian Steel, for appellee.