296 Ga. 512

FINAL COPY

S14A1359.  KOSTURI v. THE STATE.

NAHMIAS, Justice.

Appellant Kevin Kosturi was convicted of malice murder and other crimes in connection with the shooting death of Angel Hope Freeman.  On appeal, he argues only that the evidence presented at his trial was legally insufficient to sustain his convictions.  We affirm.[1]

1.    Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following.  Appellant was 15 years old, and Freeman was 16, when she was killed.  The two teenagers had started dating in the fall of 2010.  Over the next several months, they had numerous arguments

---

[1]  Freeman was killed on February 21, 2011.  On May 5, 2011, a Clayton County grand jury indicted Appellant for malice murder, felony murder, aggravated assault with a deadly weapon, making false statements, tampering with evidence, possession of a handgun by a person under the age of 18, and possession of a firearm during the commission of a felony.  In the same indictment, the grand jury charged Robert Bethune with furnishing a handgun to a person under age 18 and contributing to the delinquency of a minor.  Appellant and Bethune were re-indicted on the same charges on September 8, 2011.  Their trial was set to begin on February 25, 2013.  That day, Bethune pled guilty to the two charges against him; he was later sentenced under the First Offender Act to ten years in prison, with the first 36 months to be served in confinement and the balance to be served on probation.  Appellant was tried from February 25 to March 1, and the jury found him guilty of all charges.  On March 18, 2013, the trial court sentenced Appellant to serve life in prison for malice murder and consecutive terms of years on other counts.  Appellant filed a timely motion for new trial, which his new appellate counsel amended on August 5, 2013.  The trial court denied the motion on December 30, 2013.  Appellant filed a timely notice of appeal, and the case was docketed in this Court for the September 2014 term and submitted for decision on the briefs.

and break-ups, which often stemmed from Appellant's being jealous of Freeman's male friends. After one such argument, two friends of the couple heard Appellant say, "I'm going to kill her." Both witnesses testified that Appellant made similar statements on other occasions when he was upset with Freeman, and after another argument, Appellant told a classmate, "If I can't have her, no one can." On Valentine's Day 2011, a former boyfriend contacted Freeman, which led to another argument and break-up. After that, one of Freeman's friends testified, Freeman became concerned that "something had changed in [Appellant]."

A few days later, on February 20, 2011, Appellant's 21-year-old neighbor, Robert Bethune, gave Appellant a loaded .38-caliber revolver. That night, Appellant exchanged text messages with Freeman, telling her that he had a gun and suggesting that he was going to kill himself. Freeman told Appellant that she loved him and agreed to meet him at his home the next day. When Freeman met Appellant on the afternoon of February 21, he led her to a small wooden fort in the woods nearby, where he was keeping the gun. Appellant then killed Freeman with a single shot fired through her heart at close range. At some point thereafter, Appellant called 911. When the police arrived, Appellant told them

that a Hispanic male had shot Freeman from 40 yards away as they were sitting on the fort. The police initiated a search but determined that a shot as Appellant had described would be nearly impossible.

Appellant was taken to the police station for further questioning. His mother arrived shortly thereafter. Appellant was then advised of his rights pursuant to Miranda v. Arizona, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966), which he waived. Appellant's mother was present for the remainder of the interview. After the investigators told Appellant that stippling around the entrance wound indicated that Freeman had been shot at close range, he changed his story, claiming that she shot herself and that he threw the gun into the lake behind the fort because he "didn't want anyone to think she was a bad person." The police then took Appellant back to the crime scene to show them where he threw the gun, which was recovered the next day. During a later interview at the police station, Appellant changed his story again after the investigators told him that they did not believe that Freeman shot herself. This time, Appellant claimed that he accidentally shot her while playing with the gun. A test performed on Appellant's hands revealed the presence of gunshot residue.

At trial, Appellant relied on a defense of accident, but he did not testify.

3

The State's firearms expert testified that the revolver used to shoot Freeman required 2.5 pounds of trigger-pressure to fire if the hammer was cocked and 11.25 pounds of trigger-pressure to fire if the hammer was not cocked. Appellant's firearms expert agreed that if the gun was not cocked, the heavy trigger-pull "rules out accident," but he testified that an accidental discharge was much more likely if the gun was cocked before being fired. On cross-examination, the defense expert conceded that "if somebody pulls the hammer back, he's about to shoot."

2. Under OCGA § 16-2-2, "[a] person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence." Appellant argues that the evidence presented at trial was legally insufficient to support his convictions because no evidence established a criminal scheme or undertaking, nor did the evidence overcome the defense theory that Appellant lacked intent to commit the crimes. As we have often explained, however,

> "'[i]t was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) (citation omitted). When viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient

4

to authorize a rational jury to reject Appellant's accident defense and find him guilty beyond a reasonable doubt of [the crimes charged].  See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979); Smith v. State, 292 Ga. 620, 621 (740 SE2d 158) (2013); Brown v. State, 292 Ga. 454, 456 (738 SE2d 591) (2013).

Thompson v. State, 295 Ga. 96, 98 (757 SE2d 846) (2014).   Appellant's challenge to his convictions is therefore without merit.[2]

Judgment affirmed.  All the Justices concur.

Decided February 16, 2015.

Murder. Clayton Superior Court. Before Judge Carter.

Charles M. Evans, for appellant.
Tracy Graham-Lawson, District Attorney, Elizabeth A. Baker, Michael D. Thurston, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General, for appellee.

---

[2]  In making his sufficiency argument, Appellant suggests that the medical examiner's testimony at trial about the definition of accident that her office used in determining the manner of Freeman's death was inapposite to the statutory definition of accident.  However, he did not object to that testimony, and "[w]hen no objection to testimony is raised at trial, the issue is waived, and the error, if any, is not preserved for appeal."  Miller v. State, 295 Ga. 769, 775 (764 SE2d 135) (2014). Appellant also did not object to the trial court's jury instruction on the accident defense.