## S16A0902. BRADFORD v. THE STATE.
### (792 SE2d 684)

BENHAM, Justice.

Appellant Thomas E. Bradford appeals his convictions for felony murder and possession of a firearm during the commission of a crime in relation to the shooting death of Raymond Lee.[1] For reasons stated below, we affirm.

1. Appellant alleges the evidence was insufficient to convict. We disagree. The evidence construed in a light most favorable to the verdict shows appellant worked as a contracted truck driver hauling sludge from a Columbia County wastewater treatment plant for which Lee was the manager. On the day in question, appellant saw that his truck had been loaded in a way he believed to be improper. Because this had happened in the past, appellant was convinced his

---

[1] The crime occurred on April 1, 2011. On May 26, 2011, a Columbia County grand jury indicted appellant on charges of malice murder, felony murder, and possession of a firearm during the commission of a crime. Appellant was tried before a jury from February 20, 2012, to February 24, 2012, and the jury acquitted appellant of malice murder and returned verdicts of guilt on the remaining counts of felony murder and possession of a firearm during the commission of a crime. The trial court sentenced appellant to life in prison for felony murder and five years on probation for possession. Appellant filed a motion for new trial on March 9, 2012, and filed an amended motion on March 24, 2015. On March 27, 2015, the trial court held a hearing on the motion as amended and denied it on July 22, 2015. Appellant filed a notice of appeal on August 17, 2015. Upon receipt of the record, the case was docketed to this Court's April 2016 term and submitted for a decision to be made on the briefs.

truck had been loaded improperly on purpose and so he confronted Lee about it. The two men engaged in a verbal argument that escalated into a physical altercation. Appellant had a pistol which he stated was in his pocket and which he admitted carrying with him all the time. Two eyewitnesses testified that they saw appellant point the gun at Lee and then saw the two men struggle for the gun; that Lee extricated himself from the struggle and began walking away; that appellant followed Lee and Lee, with his hands up, turned to face appellant, and that appellant shot Lee, who was unarmed.

Appellant testified at trial that Lee hit him on the head with the back of his hand and that Lee had his hand on the back of his neck when he pulled the gun from his pocket in self-defense, but that the gun discharged by accident and that he never consciously intended to fire the gun. Appellant also admitted Lee was unarmed, but stated that Lee had shown him a martial arts move four years prior to the shooting and that other plant workers referred to Lee by the nickname Jet Li, which is the name of an action movie star known for having martial arts prowess. Friends and co-workers of Lee, however, testified that he did not know martial arts and that he was called Jet Li as a joke.

The medical examiner testified Lee died from internal bleeding caused by the bullet which entered his chest and traversed his heart and lung. A ballistics expert testified the projectile recovered from Lee's body was fired by appellant's gun. In addition, the ballistics expert testified the gun was in working order and that an average of seven pounds of force was needed to pull the trigger.

The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). The jury was free to reject evidence submitted by appellant that he acted in self-defense[2] and/or that the shooting was accidental.[3] Accordingly, this allegation of error cannot be sustained.

2. Appellant contends the trial court erred when it refused to admit evidence that employees working at the wastewater treatment facility carried firearms to explain his state of mind as to why he himself was armed. This allegation of error is without merit. "A trial court's evidentiary rulings must be affirmed absent an abuse of discretion. [Cit.]" *Smith v. State*, 292 Ga. 620 (5) (740 SE2d 158) (2013). Since no plant employee other than Lee was involved in the

---

[2] See *White v. State*, 287 Ga. 713 (1) (b) (699 SE2d 291) (2010).

[3] See *Kosturi v. State*, 296 Ga. 512 (2) (769 SE2d 294) (2015).

altercation at issue, whether other plant employees carried firearms was irrelevant. Furthermore, appellant's reason for carrying a firearm was, according to his trial testimony, unrelated to other plant employees being armed but rather was to protect himself from wild animals in the remote farming areas where he delivered the sludge. The trial court did not abuse its discretion when it declined to admit this evidence.

3. The trial court declined to give appellant's requested charge on the duty to retreat, but rather gave the following charge: "A person who uses force in defending himself has no duty to retreat, and has the right to stand his ground and use force as previously described." Appellant argues the charge was erroneous because it did not include the phrase "including deadly force" which appears in OCGA § 16-3-23.1, the statute which sets forth the defense of justification. This Court reviews the jury charge as a whole to determine whether any error occurred when the trial court instructed the jury. See *Woodard v. State*, 296 Ga. 803 (2) (771 SE2d 362) (2015). Prior to giving an instruction on the duty to retreat, the trial court charged the jury on self-defense and the use of force, including deadly force. Hence, when the trial court used the phrase "use force as previously described," in the instruction on the duty to retreat, it was referencing the instruction it had just given on deadly force. Thus, the charge as a whole was an accurate statement of the law, and there was no error.

4. Appellant complains the bench conferences that took place during trial were not transcribed and that appellant was excluded from the conferences. At the motion for new trial hearing, trial counsel testified that the bench conferences concerned logistical matters or legal issues and that appellant never voiced a concern about the bench conferences. Appellant also testified at the motion for new trial hearing and admitted he could see the bench conferences taking place, but could not hear them. He also admitted he made no effort to ask his attorney or the trial court to allow him to approach the bench so that he could hear.

(a) The failure to record a bench conference does not constitute reversible error absent a showing of prejudice to the defendant. See *Sinns v. State*, 248 Ga. 385 (2) (283 SE2d 479) (1981). See also *Ruffin v. State*, 283 Ga. 87 (6) (656 SE2d 140) (2008). Here, appellant has not made any showing of prejudice and so the failure to transcribe the bench conferences provides no basis to reverse appellant's conviction.

(b) In *Zamora v. State*, 291 Ga. 512 (7) (b) (731 SE2d 658) (2012), we held that a defendant had a constitutional right to be present during bench conferences in which the removal of a juror was discussed. However, if the bench conferences only concern questions of law/legal argument and/or logistical issues, then a defendant's

right to be present is not violated. See *Heywood v. State*, 292 Ga. 771 (3) (743 SE2d 12) (2013). Here, trial counsel testified the bench conferences concerned issues of law and logistical matters. This testimony appears to be consistent with the trial transcript to the extent there was any discussion immediately prior to the bench conferences being held off the record, and appellant has not presented any evidence refuting trial counsel's testimony. Accordingly, appellant's right to be present at these bench conferences was not violated. Id. at 774.

5. The record shows there were two eyewitnesses to the shooting and that during defense counsel's cross-examination of one of the eyewitnesses, he pursued a line of questioning which implied the eyewitness had colluded with the other and/or had been coached by the prosecution to make his account of the events more consistent with the other eyewitness. In an effort to rehabilitate this eyewitness, the prosecution pursued a line of questioning as follows:

Q. What [defense counsel] wants to know is — he's asking you could you see what you saw? Did you see it clearly?
A. Yes.
Q. Are you certain that the defendant had a gun and shot the victim?
A. Yes.
Q. Could you hear it?
A. Yes.
Q. Are you confused by any of it?
A. No.
Q. Has any of his questions made you change what you saw?
A. (No response.)
Q. You want to change in any way what you saw that day?
A. (No response.)
Q. What you said today — when I asked you questions, what you've said in court —
A. Right.
Q. — is that what you saw?
A. Yes.
Q. Now, let me ask you — Let's go through. You've met with me several times, haven't you?
A. Yes.
Q. Have I told you I want you to say X, Y, and Z when you testify?
[DEFENSE COUNSEL]: Your Honor, I object.
THE COURT: Overruled.
[DEFENSE COUNSEL]: Can I state the grounds?

THE COURT: Overruled.

[DEFENSE COUNSEL]: Okay. I can't state the grounds? I have to, Judge.

THE COURT: Go ahead.

[DEFENSE COUNSEL]: Yes, sir. I object on the grounds of hearsay, and that it's just an indirect way of getting into evidence what [the prosecutor] says that he says at a certain time.

THE COURT: Overruled.

[DEFENSE COUNSEL]: Yes, sir.

. . .

Q. Did I — What did I tell you about testifying?

A. State the truth.

Q. Did I tell you go and compare your notes with someone else?

A. No.

Q. What did I tell you about talking to other people?

A. Don't.

[DEFENSE COUNSEL]: Can I just have a renewed objection as to this line of questioning? He saying things —

THE COURT: The questions is [sic] a direct rebuttal to the questions that you asked, sir. So, overruled.

As to the second eyewitness, defense counsel attempted to impeach him on cross-examination. Again, in an effort to rehabilitate the second eyewitness, the prosecutor engaged in the following colloquy:

Q. Did I ever advise you not to talk to anybody?

A. No, sir.

Q. What have I advised you to do?

[DEFENSE COUNSEL]: Your Honor, I object, on the grounds of hearsay.

THE COURT: Overruled.

Appellant contends the trial court abused its discretion in allowing these colloquies because he argues they were tantamount to hearsay.[4] Prior to the effective date of the new Evidence Code, hearsay was defined in Georgia as follows: "Hearsay evidence is that

---

[4] In addition to the questioning of these two eyewitnesses, defense counsel also complains on appeal about the prosecution's cross-examination of a defense expert. However, since appellant failed to make a hearsay objection concerning the prosecution's questioning of the expert, that issue has not been preserved for our review. See *Watson v. State*, 289 Ga. 39 (5) (709 SE2d 2) (2011).

which does not derive its value solely from the credit of the witness but rests mainly on the veracity and competency of other persons." OCGA § 24-3-1 (a).[5] See also *Mathis v. State*, 279 Ga. 100 (3) (a) (610 SE2d 62) (2005). Here, the testimony at issue does not meet the applicable statutory definition of hearsay and so the trial court did not err when it overruled appellant's objections.

6. During the trial, the jury, along with appellant and the attorneys, visited the wastewater treatment plant where the shooting took place. The visit was pre-planned by both parties in conjunction with the trial court and conducted by agreement. Neither side postured any objections prior to or immediately after the site visit took place. On appeal, appellant raises several allegations of error regarding the site visit, complaining that he was not allowed to speak with his lawyer during the visit[6] and that the trial court failed to charge the jury regarding the site visit.

(a) Inasmuch as no contemporaneous objection was made in regard to the site visit, any complaint about the manner in which the site visit was conducted has not been preserved for review on appeal. See *Yancey v. State*, 292 Ga. 812 (3) (740 SE2d 628) (2013). As such, appellant's assertion that he was precluded from communicating with his attorney during the site visit is not before us for review.

(b) Appellant likewise failed to raise any concern about the trial court's failing to charge the jury in regard to the site visit, and appellant does not contend he ever requested the trial court to do so. Therefore, we can only review an error concerning the trial court's failure to charge the jurors about the site visit for plain error. See *Alvelo v. State*, 290 Ga. 609 (5) (724 SE2d 377) (2012). To that end,

> "[p]lain error" requires a clear or obvious legal error or defect not affirmatively waived by the appellant that must have affected the appellant's substantial rights, i.e., it affected the outcome of the trial-court proceedings. Stated more succinctly, the proper inquiry is whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings. If the failure to give an instruction is shown to constitute such an error, the appellate court may remedy the error by exercising its

---

[5] OCGA § 24-3-1 (a) has been repealed and replaced by OCGA § 24-8-801 (c) which provides: " 'Hearsay' means a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

[6] During the site visit, appellant was in a patrol car with officers, stationed in a place where he could view the activities during the visit.

discretion if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citation and punctuation omitted.) Id. at 614-615. Here there has been no showing of a clear and obvious legal error and no showing that appellant's substantial rights were affected by the trial court's failure to give a charge about visiting the crime scene. Accordingly, this enumeration of error cannot be sustained.

7. Appellant contends his trial counsel rendered constitutionally ineffective assistance when he failed to object to the prosecution's commenting on appellant's pre-arrest silence.[7] At trial, the jury watched appellant's video-recorded interview with authorities. During that interview, appellant made no mention that he believed Lee practiced martial arts, made no mention that he acted in self-defense, and made no mention that his gun accidentally fired. The evidence at trial also revealed that during the altercation and after the shooting, appellant made several phone calls and talked directly to at least one plant employee. During direct examination, appellant testified he acted in self-defense because Lee was hitting him and because he believed Lee knew martial arts, and that the gun fired by accident. On cross-examination, the prosecutor engaged in the following colloquy with appellant:

Q. The day of the crime you could speak to several people that day, couldn't you?
A. I did.
Q. In fact, you did. You called 911, didn't you?
A. I did.
Q. You actually made multiple calls, didn't you?
A. I did.
Q. You had multiple opportunities on that call to say accident, didn't you?
A. I did.
Q. And you did not, did you?
A. I did not.

---

[7] Prior to the effective date of Georgia's new Evidence Code, a prosecutor was prohibited from commenting on a defendant's pre-arrest silence per *Mallory v. State*, 261 Ga. 625 (409 SE2d 839) (1991); and since appellant was tried before the effective date of the new Evidence Code, *Mallory* is applicable to his case. "[W]e note [however] that *Mallory* was decided not on constitutional grounds but rather based on former OCGA § 24-3-36. [See id. at 630.] . . . We express no opinion about the continuing validity of *Mallory* under the new Evidence Code." *State v. Sims*, 296 Ga. 465 (3) (769 SE2d 62) (2015).

Q. You did say this got out of hand, and I didn't want it to happen — didn't want this to happen today, didn't you?
A. That's correct.
Q. You did not say accident?
A. Is that a question?
Q. Yes.
A. No, I did not.
Q. You did not say self[-]defense?
A. I did not.
Q. You did not say martial arts, did you?
A. No, I did not.[8]

Appellant alleges this cross-examination constituted improper commentary on appellant's pre-arrest silence and that his trial attorney performed deficiently in failing to object and that he was prejudiced therefore. In order to prevail on a claim of ineffective assistance of counsel, appellant

> must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct.

(Citation and punctuation omitted.) *Pruitt v. State*, 282 Ga. 30, 34 (4) (644 SE2d 837) (2007). If a defendant fails to meet his burden on one prong of the two-prong test, then the other prong need not be reviewed by the Court. *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012). As an initial matter, appellant did not remain silent in the aftermath of the shooting, but called 911 immediately thereafter and was arrested while still on the phone with the 911 operator.[9] Moreover, the prosecutor's line of questioning permissibly explored the inconsistencies between appellant's trial testimony and his prior statements made to civilians on the scene and the police soon after the shooting. See *Johnson v. State*, 292 Ga. 785 (3) (741 SE2d 627) (2013).

---

[8] The prosecutor asked a few more similar questions that are not transcribed herein. The questions included in this division of the opinion are exemplary of the pattern of questioning at issue.

[9] Therefore, this case is distinguishable from *State v. Sims*, supra, where the defendant did not come forward to police of his own accord and the prosecutor improperly commented that the defendant never called police.

Accordingly, the trial court properly denied appellant's claim that his counsel rendered constitutionally ineffective assistance.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 31, 2016.

*Holly G. Chapman*, for appellant.

*Ashley Wright, District Attorney, Joshua B. Smith, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason M. Rea, Assistant Attorney General*, for appellee.