In the Supreme Court of Georgia

Decided: January 22, 2019

S18A1340. THOMPSON v. THE STATE.

MELTON, Chief Justice.

Following an April 2009 jury trial, Jovan Thompson was found guilty of felony murder and related crimes in connection with the shooting death of his pregnant girlfriend, Sarhonica Thrasher. Thompson now appeals, contending that the evidence presented at trial was insufficient to support the verdict and that the trial court made evidentiary and charging errors. For the reasons set forth below, we affirm.[1]

---

[1] On January 20, 2009, a Muscogee County grand jury indicted Thompson for malice murder, felony murder (predicated on aggravated assault), two counts of possession of a firearm during the commission of a crime, and criminal attempt to commit feticide. Following an April 27-30, 2009 jury trial, Thompson was found guilty of felony murder, both counts of possession of a firearm, and criminal attempt to commit feticide. He was acquitted of malice murder. On May 4, 2009, the trial court sentenced Thompson to life imprisonment for felony murder and five years concurrent for attempted feticide. The trial court also sentenced Thompson to five consecutive years for one of the possession of a firearm counts. The trial court merged the remaining possession of a firearm count into the other possession count for sentencing purposes. On May 29, 2009,

1. In the light most favorable to the verdict, the record shows that, in May of 2008, Thompson threatened to kill Thrasher and Thrasher's ex-boyfriend if Thrasher ever left Thompson for her ex-boyfriend. In the early morning hours of June 6, 2008, Thompson shot and killed Thrasher at point-blank range with a .32 caliber pistol in the driveway of the house Thompson shared with his mother. Thompson then drove Thrasher in her car to the emergency room of the Muscogee County Medical Center. While on the way to the hospital, Thompson threw his gun into a sewer. When Thompson arrived at the hospital, he carried Thrasher's body into the emergency room, told hospital staff she had been shot during a drive-by shooting, and then left the hospital. Thrasher was not breathing and had no pulse when she was brought into the emergency room, and when staff removed her clothing to perform CPR they realized she was pregnant. Thrasher was seven

Thompson filed a timely motion for new trial, which he amended with new counsel on March 8 and 21, 2016. The trial court eventually denied the motion on January 5, 2017, nearly eight years after it had been originally filed. See Owens v. State, 303 Ga. 254, 258 (811 SE2d 420) (2018) (reminding the bench and bar that "[w]e do not condone . . . inordinate delay[s] in . . . motion for new trial proceeding[s]," as such "delays put at risk the rights of defendants and crime victims and the validity of convictions obtained after a full trial") (citation and punctuation omitted). Thompson filed a timely notice of appeal on January 13, 2017, and, following the payment of costs, his appeal was docketed in this Court to the August 2018 term, and orally argued on October 9, 2018.

months pregnant at the time of the shooting, and hospital staff were able to save Thrasher's premature baby after performing an emergency cesarean section.

Around 4:30 a.m. on the morning of the murder, police received two 911 hang-up calls from Thompson's home, and Officer Keith Gibson was dispatched to the home in response to a possible domestic dispute. When Officer Gibson arrived, he discovered Thrasher's car still running in the driveway with the driver's side door open, and Thompson walking out of the front door of the house in bloodstained clothes. Thompson told the officers that his girlfriend had been shot during a drive-by shooting and that he had just returned home from taking her to the hospital. He explained that he had been lying in bed when he heard two gun shots, and that he ran outside with his gun to find Thrasher laying on the ground and a Nissan Altima speeding away down the road.

To ensure no one else at the scene was hurt, Officer Gibson placed Thompson in the patrol car and conducted a sweep of the residence, where he found marijuana floating in the bathroom toilet. Officer Gibson then secured the house and called an additional officer to the scene. Police discovered two live rounds of ammunition in the driveway of the home, bullets in Thompson's bedroom that matched the live rounds, one spent shell casing from a .32 caliber

pistol, and a towel on the back of Thrasher's still-running car. During their investigation, police also found the .32 caliber pistol that Thompson had thrown into the sewer. Evidence later revealed that Thrasher had been shot at point-blank range, as the state's medical examiner testified at trial that Thrasher's injuries were consistent with a contact gunshot wound, indicating that at the time the trigger was pulled, the muzzle of the weapon was touching the side of Thrasher's head and that she had been face-to-face with the shooter. Spatters of blood along Thrasher's car and the front of the house were also consistent with a contact gunshot wound.

After placing Thompson in the patrol car, police decided to take him into a police station for further questioning, and Thompson's story changed from the one that he had initially told police at his house. His story then changed again at trial. Specifically, when Thompson arrived at the police station, he initially continued to tell the same drive-by shooting story that he told while still at his house. However, after being informed by police that his hands were going to be tested for gun-powder residue, Thompson changed his story, telling the officers that he had accidentally shot Thrasher when his gun fell out of his hand and fired one shot. When confronted with evidence at trial showing that Thrasher was

actually facing the gun at the time that it was fired, Thompson changed his story yet again and claimed that, while he had still accidentally shot Thrasher after the gun slipped out of his hand, Thrasher was facing Thompson at the time and the gun happened to hit her head as he "swooped" his hand under the pistol, at which point the weapon discharged while he was standing to Thrasher's left.

The evidence was sufficient to enable a rational trier of fact to find Thompson guilty beyond a reasonable doubt of the crimes for which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LEd2d 560) (1979). The jury was free to reject Thompson's claims that the shooting had occurred by accident. See, e.g., Kosturi v. State, 296 Ga. 512 (2) (769 SE2d 294) (2015).

2. Thompson contends that the trial court abused its discretion and committed reversible error by allowing evidence of marijuana found at Thompson's house to be admitted during trial because such evidence placed his character in issue. We disagree.

Prior to trial, Thompson moved to exclude a portion of his recorded statements to police officers referring to marijuana that Officer Gibson found during his initial sweep of Thompson's house, as well as related testimony from

other police officers. The trial court ruled that evidence of the marijuana was admissible under Georgia's old Evidence Code as evidence of the res gestae of the arrest and search.[2] See Nichols v. State, 282 Ga. 401, 404 (2) (651 SE2d 15) (2007) (under the old Evidence Code, res gestae evidence was admissible where the arrest was "contemporaneous or closely related in time to the offense and [had] a logical relation to the offense"). However, pretermitting whether the trial court erred in admitting the evidence, the admission of the marijuana evidence was harmless in light of the overwhelming evidence of Thompson's guilt. See, e.g., Bozzie v. State, 302 Ga. 704, 708 (2) (a) (808 SE2d 671) (2017) (the test for nonconstitutional harmless error requires a showing that it is "highly probable that the error did not contribute to the verdict."); Johnson v. State, 292 Ga. 785 (4) (741 SE2d 627) (2013) (even if trial court erred in admitting evidence of defendant's involvement in marijuana transaction, such error was harmless in light of overwhelming evidence of defendant's guilt in connection with murder). Specifically, Thompson admitted to shooting Thrasher after his story to police and hospital officials about a drive-by shooting fell apart; a witness testified

---

[2] Because Thompson's trial took place before the effective date of Georgia's new Evidence Code on January 1, 2013, the provisions of Georgia's old Evidence Code apply to this case.

about the threat that Thompson made to kill Thrasher a month prior to the murder; forensic and medical evidence showed that the gun used in the murder had to be in contact with Thrasher's head at the time of the shooting and that the trajectory of the bullet was consistent with the State's theory that Thompson shot Thrasher while facing her with the gun positioned downward; a shell casing found at the murder scene matched the type of gun that Thompson owned and discarded on the way to the hospital; and bullets found in Thompson's bedroom matched live shells found at the scene of the murder. Given Thompson's own admissions and the corroborating medical and forensic evidence discrediting the multiple versions of Thompson's stories, it is highly probably that the evidence of marijuana found floating in his toilet after the murder did not contribute to the verdict.

3. Thompson asserts that the trial court committed plain error by failing, sua sponte, to instruct the jury that, if it returned a verdict of guilty as to either of the murder counts, a sentence of life in prison would be mandatory.[3] However, this

---

[3] See OCGA § 16-5-1 (e) (1) ("A person convicted of the offense of murder shall be punished by . . . imprisonment for life without parole, or by imprisonment for life."). Because Thompson failed to request the charge that he claims that the trial court should have given, review of this issue on appeal is limited to a review for plain error affecting substantial rights. OCGA § 17-8-58 (b) ("Failure

Court has recently re-emphasized that the failure to give such a charge does not amount to error, let alone plain error. See <u>Doleman v. State</u> Ga. (4) (Case No. S18A1155, decided Dec. 11, 2018). This enumeration also fails.

<u>Judgment affirmed. All the Justices concur</u>.

---

to object [to a portion of a jury charge] shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties.").